HATFIELD (PARKER v.). See Case No. 10,736.

HATHAWAY (COLLINS v.). See Case No. 3,014.

---

## Case No. 6,212.

### HATHAWAY v. JONES.

[2 Spr. 56.] [1]

District Court, D. Massachusetts. Jan., 1863.

ADMIRALTY — WHALING VOYAGE— PROPORTION OF PROFITS OF DISCHARGED SEAMAN —GRIEVANCES — FOREIGN CONSUL.

1. In whaling voyages, if a man who ships at home is discharged abroad for other cause than sickness, and without his own fault, he is to have the same pro ratâ settlement that is provided in the articles for discharge by reason of sickness. This is not an absolute rule of law, but is adopted by this court, by analogy, and as most just and reasonable, and most consonant with the nature and purposes of the voyage. If other terms of discharge are fairly agreed upon, they are binding. If the circumstances of any particular case show the pro ratâ settlement to be inapplicable or unreasonable, it will not be enforced.

[Cited in Jenks v. Cox, Case No. 7,277.]

2. It is the duty of the master of a ship to hear complaints by inferiors against superiors, made in a reasonable manner, and to redress grievances found to exist; and he is not necessarily to sustain the superior because of his station.

3. The discharge made in a foreign port must be before the consul, but the money settlement need not be; and the consul is not entitled to charge a commission on the amount paid, for merely witnessing the payment.

In admiralty.

R. H. Dana, Jr., for libellant.
W. W. Crapo, for respondent.

SPRAGUE, District Judge. This is a suit in admiralty for the wages of the second mate of the respondent's ship Eliza Adams, engaged in the whale-trade. The libellant was discharged at Honolulu, and paid off at his lay (one-thirtieth) of the oil actually taken at that time, at what is called consular prices. The libellant now asks to set aside this settlement, and claims to be paid pro ratâ on the entire voyage,—that is, to receive his lay of such portion of all the oil taken during the whole voyage, as the time he served bears to the length of the voyage; or, if that is not

1 [Reported by John Lathrop, Esq., and here reprinted by permission.]

allowed, then to receive his lay of the oil taken at the time of his discharge, at the New Bedford prices. The respondent contends that the settlement at Honolulu is binding. There are certain charges and deductions, made at Honolulu, to which the libellant objects.

By the shipping-articles in whaling voyages, it is provided that when a man is separated from the vessel during the voyage by death or sickness, he shall be paid pro ratâ, as above stated. But there are no stipulations in the articles to govern any other case of a separation from the vessel. In such cases, this court has adopted the rule provided in the articles for cases of separation by death or sickness, by analogy, and as in itself just and reasonable, and therefore most likely to effectuate the real intention of the parties at the time the contract was made. But if there are circumstances showing that the pro ratâ settlement would not be just and reasonable, or if any other mode was fairly agreed upon at the time the man left the vessel, the pro ratâ settlement will not be adopted; the object of the court being to ascertain and carry out the intention of the parties which they have not expressed. But in most cases of discharge by consent, where each party acts freely, the terms upon which the contract of service shall be dissolved are agreed upon; the willingness of one or the other party to dissolve the contract usually depending upon the state of the voyage at the time, and the probabilities of the future, and the pecuniary terms proposed.

In this case, the witnesses, who are the libellant, Captain Hawes, the master, and the third mate, Mr. Thomas, now master of another ship, are respectable and trustworthy men, and agree substantially in their statements, and, I am persuaded, all intend to give fair accounts of the transaction. From their evidence I gather the facts to be these. The libellant and the chief mate could not agree. The master was satisfied that the difficulty between them was of such a character that the interests of the voyage and the comfort of all made it best that one or the other should leave. The libellant was a peaceable man and a good officer; and, if the master had only his own wishes and the comfort of the crew and officers to consult, he would have retained him. The chief mate made trouble on board, and had attacked the third mate and ill treated the libellant. But he was a good whaleman, had taken a great deal of oil, and was a favorite of the owners for that reason, while the libellant had been entirely unsuccessful in getting oil. The master did not approve of the conduct of the chief mate; but said that it was his duty to sustain him, right or wrong. The libellant said that if the chief mate imposed upon him, he should resent it, and defend his own rights, if they were not protected by the master.

The libellant was willing to be discharged, while the chief mate was not. Under these

circumstances, the master and libellant agreed on a discharge, the terms of which were that the libellant should receive his lay of the oil then taken. But it was not determined, or was not fairly understood between them, whether he should be paid there, at consular prices, or take an order on the owners for a settlement at the end of the voyage, at New Bedford prices.

The master and libellant went 'ashore to effectuate the discharge, and on their way to the counsul's office the master said he should pay off the libellant there, at consular prices. The libellant objected, and said he did not wish for his money there, and would not accept consular rates, but wished for an order to settle at New Bedford. This the master refused. The libellant then said he would return to the vessel and fight it out, or words to that effect, rather than take those terms. The master said it had gone too far now for him to return, and insisted on the discharge being completed on those terms. The libellant yielded, but proposed that, after getting the discharge before the consul, the wages should be paid without the intervention of the consul, as the consul charged a commission; but the master, probably thinking it necessary, insisted on the payment being made before the counsel. This was done, and the consul took off two and a half per cent. as his commissions.

From these facts, it seems to me that the discharge at first was by consent, on the terms of a lay of the oil taken. So far, the agreement was fair and mutual. Afterwards, the parties differed as to the further question of the place and rate of payment. In many cases where a part of an agreement falls through, the whole must be set aside. But in this instance, it seems to me right to carry into effect the terms of the discharge, so far as they had been agreed upon. The subsequent point, upon which they differed. is fairly separable. I shall therefore give the libellant his lay of the oil taken, and not the pro rata on the entire voyage, as he claims. But I think he is not bound by his assent to the terms of consular prices. He yielded under that kind of duress against which a court of admiralty, which acts on equitable principles, will relieve him. There was sure to be trouble and discomfort, and perhaps danger, in his relations with the chief mate. The master, who all agree is a kind and just man. had yet a notion, very common among masters. but entirely erroneous, that he must sustain his chief officer, right or wrong, so long as he kept him in command. And if the libellant had insisted on going back, it would have been an assertion of a bare legal right, against the will of the master; and if

the master had found it necessary to yield to it, the situation of the libellant would have been such that no court could require him to insist on continuing the voyage, at the peril of losing a portion of the stipulated compensation for previous services.

I wish it understood that the master, while at sea, as holding supreme authority, is to do justice to all persons under his command. He should control the officers as well as the men. All should be able to come freely to him, in a reasonable manner, with their complaints; and if there has been a serious wrong, the master should protect the men or inferior officers. I know it is said this will relax discipline. But, in my judgment, it will tend to secure a more ready submission to the master's authority. If he sustains the officer, right or wrong, the officer, and not he, decides the question. The knowledge that masters have this feeling leads men to fear to present their grievances, and gives confidence to bad officers, until things ripen into mutiny or violence. My experience in this court is, that many of the most serious troubles would be avoided, if masters would be the actual rulers and arbiters, and inquire into complaints when reasonably stated, and redress grievances if found to exist. This is their duty, as it is their best policy.

As the place where the lay should be paid and the rate at which it should be calculated were, as I have said, not agreed upon, but acquiesced in under duress, it is necessary for me to determine what the libellant is entitled to. It is most in consonance with the terms of the contract and nature of the voyage. to have it settled at New Bedford, and at home prices. If a man chooses to take money in a foreign port, at the price in that port, he can do so; but if he does not agree to it, he should not be compelled to take money when he does not wish for it, and at consular rates, which the evidence shows are, for some reason or other, almost always a good deal below what would seem to be the fair calculation of the market rate of the place, or the estimated New Bedford price. less freight home and insurance. By settling before the consul, a commission of two and a half per cent. was incurred. There is no reason for this. The discharge must be made before the consul, but the payment need not be before him. It may be with or without witnesses; and if before witnesses, no witness charges a commission for seeing money paid, and that is all the consul did.

The libellant is to have his lay of the oil taken at the time of his discharge, at the price for which the oil sold in New Bedford, with costs.